# Exhibit A

Cover Sheet

Case No 2019-00850


    Plaintiff:
      EARNSHAW WILLIAM N

      EARNSHAW HELEN A

    ** (VS) **

    Defendant:
      CHESAPEAKE APPALACHIA LLC

      EQUINOR USA ONSHORE PROPERTIES INC   FKA

      STATOIL USA ONSHORE PROPERTIES INC

Case No 2019-00850
EARNSHAW WILLIAN N (VS) CHESAPEAKE APPALACHIA LLC

      Date
      Filed
- - - - - - - - - - - - - - - FIRST ENTRY - - - - - - - - - - - - - - -


  1  8/01/19  COMPLAINT IN CIVIL ACTION WITH ATTACHED CERTIFICATE OF SERVICE
              FILED.
                              035 Image page(s) exist(s) for this entry


- - - - - - - - - - - - - - LAST ENTRY - - - - - - - - - - - - - -

# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet

Wyoming _____ County

| For Prothonotary Use Only: | |
|---|---|
| Docket No: **2019-850** | PROTHONOTARY WYOMING COUNTY, PA |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Petition
- ☐ Transfer from Another Jurisdiction
- ☐ Declaration of Taking

| Lead Plaintiff's Name:<br>William N. Earnshaw | Lead Defendant's Name:<br>Chesapeake Appalachia, L.L.C. |
|---|---|

**Are money damages requested?** ☐ Yes   ☐ No

**Dollar Amount Requested:** (check one)
- ☐ within arbitration limits
- ☐ outside arbitration limits

**Is this a Class Action Suit?** ☐ Yes   ☒ No

**Is this an MDJ Appeal?** ☐ Yes   ☒ No

Name of Plaintiff/Appellant's Attorney: Richard L. Huffsmith

☐ Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**SECTION B**

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☐ Other: _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other

- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other

- ☐ Other: _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other

- ☐ Zoning Board
- ☐ Other: _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☒ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other: _____

*Updated 1/1/2011*

Richard L. Huffsmith
Pa. I.D. No. 78895
26 East Tioga Street
Tunkhannock, Pennsylvania 18657
(570) 240-4400
Attorney for Plaintiffs



| | |
|---|---|
| WILLIAM N. EARNSHAW <br> 832 JAYNES BEND ROAD <br> MEHOOPANY, PA  18629 <br><br> AND <br><br> HELEN A. EARNSHAW <br> 42 OSBORNE HILL ROAD <br> SANDY HOOK, CT  06482 <br>          Plaintiffs <br><br>     v. <br><br> CHESAPEAKE APPALACHIA, L.L.C. <br> 6100 N. WESTERN AVENUE <br> OKLAHOMA CITY, OK  73118 <br><br> AND <br><br> and EQUINOR USA ONSHORE <br> PROPERTIES, INC. formerly known as <br> STATOIL USA ONSHORE PROPERTIES, <br> INC. <br> 2103 CITY WEST BLVD. <br> SUITE 800 <br> HOUSTON, TX  77042 <br>          Defendants. | IN THE COURT OF COMMON PLEAS <br> OF WYOMING COUNTY, PA <br><br><br><br><br><br><br> CIVIL ACTION <br><br><br><br><br><br> CASE NO. _2019 850_ |

## **NOTICE**

YOU HAVE BEEN SUED IN COURT.  IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT AND NOTICE ARE SERVED, BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND FILING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU.  YOU ARE WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY

CLAIMED IN THE COMPLAINT OR FOR ANY OTHER CLAIM OR RELIEF REQUESTED BY THE PLAINTIFF.   YOU MAY LOSE MONEY OR PROPERTY OR OTHER RIGHTS IMPORTANT TO YOU.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

Pa. Lawyer Referral Service
P.O. Box 186
100 South Street
Harrisburg, PA  17108
(800) 692-7375
(717) 238-6715

Wyoming County Prothonotary's Office
Wyoming County Courthouse
Courthouse Square
Tunkhannock, PA  18657
(570) 836-3200  Ext. 232

Richard L. Huffsmith
Pa. I.D. No. 78895
26 East Tioga Street
Tunkhannock, Pennsylvania 18657
(570) 240-4400
Attorney for Plaintiffs

| | |
|---|---|
| WILLIAM N. EARNSHAW<br>832 JAYNES BEND ROAD<br>MEHOOPANY, PA 18629<br><br>AND<br><br>HELEN A. EARNSHAW<br>42 OSBORNE HILL ROAD<br>SANDY HOOK, CT 06482<br>　　　　　Plaintiffs<br><br>　　　v.<br><br>CHESAPEAKE APPALACHIA, L.L.C.<br>6100 N. WESTERN AVENUE<br>OKLAHOMA CITY, OK 73118<br><br>AND<br><br>and EQUINOR USA ONSHORE<br>PROPERTIES, INC. formerly known as<br>STATOIL USA ONSHORE PROPERTIES,<br>INC.<br>2103 CITY WEST BLVD.<br>SUITE 800<br>HOUSTON, TX 77042<br>　　　　　Defendants. | IN THE COURT OF COMMON PLEAS<br>OF WYOMING COUNTY, PA<br><br><br><br><br><br><br><br><br>CIVIL ACTION<br><br><br><br><br><br><br><br>CASE NO. 2019-850 |

## __COMPLAINT__

NOW COMES Plaintiffs William N. Earnshaw and Helen A. Earnshaw, by their undersigned counsel, and hereby file this their Complaint against Chesapeake Appalachia, L.L.C. and Equinor USA Onshore Properties, Inc., formerly known as Statoil USA Onshore Properties, Inc. and in support thereof shows as follows:

## PARTIES

1. Plaintiff William N. Earnshaw is an adult individual residing at 832 Jaynes Bend Road, Mehoopany, Pennsylvania 18629.

2. Plaintiff Helen A. Earnshaw is an adult individual residing at 42 Osborne Hill Road, Sandy Hook, Connecticut 06482.

3. Defendant Chesapeake Appalachia, L.L.C. ("Chesapeake") is an Oklahoma limited liability company with its principal place of business located at 6100 N. Western Ave. Oklahoma City, Oklahoma 73118.

4. Defendant Equinor USA Onshore Properties, Inc., formerly known as Statoil USA Onshore Properties, Inc. ("Equinor") is a Delaware corporation with an address at 2103 City West Boulevard, Suite 800, Houston, Texas 77042.

5. Plaintiffs William N. Earnshaw and Helen A. Earnshaw may be referred to herein collectively as the "Plaintiffs".

6. Defendants Chesapeake and Equinor may be referred to herein collectively as "Defendants".

## JURISDICTION AND VENUE

7. Jurisdiction is proper in this Court pursuant to 42 Pa. C.S.A. § 5301. Defendants are foreign association registered to do business in the Commonwealth of Pennsylvania and carry on a continuous and systematic part of their general business in the Commonwealth of Pennsylvania.

8. Venue is proper in this Court pursuant to Rule 1006 of the Pennsylvania Rules of Civil Procedure since, inter alia, the claims giving rise to this action took place and/or occurred in

2

Wyoming County, Pennsylvania and pertain to real property located in Wyoming County, Pennsylvania.

## FACTS

9. This is an action seeking a declaration that the subject oil and gas lease is null and void or alternatively for specific performance, trespass and damages resulting from Defendants' breach of the subject oil and gas lease.

10. Plaintiffs acquired an interest in an oil and gas lease under which the Defendants are the Lessees. Defendants failed to comply with the terms under the Lease and as such the Lease is null and void as to Plaintiffs' property. Alternatively, Defendants breached the Lease as follows: i) Defendants breached their obligation under the Lease regarding the size of the Unit in in which the leased premises, or a part thereof, is locate; and ii) Defendants failed to maintain a well density as provided in the oil and gas lease.

11. William Shoemaker and his wife, Rosemary Shoemaker, were the owners of certain parcels of real property located in the Township of Mehoopany, County of Wyoming and Commonwealth of Pennsylvania (the "Property"). A true and correct copy of the Deed evidencing this ownership is attached hereto as Exhibit "A" and is incorporated herein the same as if fully set forth and copied at length.

12. On or about October 12, 2007, William Shoemaker and Rosemary Shoemaker (Collectively "Shoemaker") entered into an Oil and Gas Lease with Magnum Land Services, LLC (the "Lease") with respect to the Property. A true and correct copy of the Lease is attached hereto as Exhibit "B" and is incorporated herein the same as if fully set forth and copied at length.

3

13. Magnum Land Services, LLC assigned all of its rights, title and interests in and under the Lease to Defendant Chesapeake.

14. Defendant Chesapeake assigned an interest in the Lease to Defendant Equinor. Based upon information and belief, Chesapeake and Equinor are the sole current lessees under the Lease.

15. On or about September 14, 2011, Shoemaker sold, transferred and conveyed a portion of the Property to Plaintiffs (the "Plaintiffs' Property"). A true and correct copy of the Deed evidencing the conveyance is attached hereto as Exhibit "C" and incorporated herein the same as if fully set forth at length.

16. Under Paragraph 19 of the Lease, the Lessee had the right to extend the term of the Lease for an additional five (5) year period provided Lessee complied with the terms of Paragraph 19. The original primary term of the Lease expired on October 11, 2012 and Defendants exercised the option to extend the term of the Lease for the additional five (5) year period. However, Defendants failed to comply with the terms of the Lease and as such, the Lease expired by its own terms on October 11, 2017.

17. Although Defendants contend that they currently hold the Lease by production, they do not because they have failed to comply with the terms of the Lease regarding the size of the units permitted under the terms of the Lease. In their attempt to keep the Lease from expiring due to lack of production, Defendants allegedly added a small number of acres from the Earnshaw Property into a unit. However, Defendants' actions were in violation of the terms of the Lease and null and void since the unit exceeded the number of acres permitted under the Lease with the addition of Plaintiffs' Property. Defendants cannot attempt to add a portion of the Earnshaw Property to a unit in violation of the terms of the Lease and then attempt to rely on that illegal act

4

to support their position that the Lease is still in effect due to that illegal act. Defendants cannot breach the Lease and then use that breach as a basis to claim that the Lease is in effect beyond the stated term of the Lease.

18. As a result of Defendants' failure to comply with the term of the Lease, the Lease has expired by its on terms as to Plaintiffs' Property.

19. Since the Lease expired as to the Plaintiffs' Property, Defendants have no further rights under the Lease as to Plaintiffs' Property.

20.   Alternatively, and without waiving the foregoing claim that the Lease is null and void, assuming the Lease was still in effect, which it was not, Chesapeake and Equinor breached the Lease as follows: i) Chesapeake and Equinor breached their obligation under the Lease regarding the size of the unit in which the leased premises, or a part thereof, is locate; and ii) Chesapeake and Equinor failed to maintain a well density as provided in the Lease.

21. Paragraph 8 of the Lease states: "Lessor hereby grants to the Lessee the right at any time to consolidate the leased premises or any part thereof or strata therein with other lands to form a oil and/or coalbed methane gas development unit of not more than 640 acres or such larger unit as may be required by state law or regulation for the purpose of drilling a well thereon and Lessee shall be required to maintain a well density of at least 1 well per 160 acres contained in such unit." The subject unit allegedly maintained by Chesapeake and Equinor is in excess of 640 acres and Chesapeake and Equinor failed to maintain a well density of at least 1 well per 160 acres contained in such unit. Again, if the Lease was still in effect, which it is not, the foregoing breaches would constitute material breaches of the Lease.

## COUNT I
## DECLARATORY JUDGMENT

22. The preceding paragraphs 1 through 21 of this Complaint are incorporated herein by reference the same as if fully set forth at length herein.

23. Defendants Chesapeake and Equinor failed to comply with the term of the Lease.

24. As a result of Defendants Chesapeake and Equinor's failure to comply with the term of the Lease, the Lease expired as to Plaintiffs' Property on October 11, 2017 and Defendants have no rights under the Lease with respect to Plaintiffs' Property.

25. Plaintiffs seek and are entitled to a declaratory judgment declaring that i) Plaintiffs are the owners of Plaintiffs' Property; ii) Plaintiffs owned the Plaintiffs' Property prior to the expiration of the term of the Lease; iii) that Defendants did not comply with the terms of the Lease as to Plaintiffs' Property; iv) the Lease was not extended as to Plaintiffs' Property beyond October 11, 2017; v) Defendants have no further rights under the Lease after October 11, 2017 with respect to Plaintiffs' Property; vi) the Lease is null and void as to Plaintiffs' Property; vii) Defendants shall cease operations on or with respect to Plaintiffs' Property and viii) that Defendants' entry upon and under, and any operations that include Plaintiffs' Property after October 11, 2017 constitutes an unlawful trespass.

WHEREFORE, Plaintiffs demand that a declaratory judgment be entered in their favor and against Defendants Chesapeake and Equinor, jointly and severally, declaring that: i) Plaintiffs are the owners of Plaintiffs' Property; ii) Plaintiffs owned the Plaintiffs' Property prior to the expiration of the term of the Lease; iii) that Defendants did not comply with the terms of the Lease as to Plaintiffs' Property; iv) the Lease was not extended as to Plaintiffs' Property beyond October 11, 2017; v) Defendants have no further rights under the Lease after October 11,

6

2017 with respect to Plaintiffs' Property; vi) the Lease is null and void as to Plaintiffs' Property; vii) Defendants shall cease operations on or with respect to Plaintiffs' Property and viii) that Defendants' entry upon and under, and any operations that include Plaintiffs' Property after October 11, 2017 constitutes an unlawful trespass and granting Plaintiffs such other and further relief, at law or in equity, to which Plaintiffs are justly and legally entitled.

## COUNT II
## UNLAWFUL TRESPASS ON LAND

26.   The preceding Paragraphs 1 through 25 of this Complaint are incorporated herein by reference the same as if fully set forth at length herein.

27.   In entering upon and/or under the Plaintiffs' Property after the expiration of the term of the Lease, Defendants interfered with Plaintiffs' right to exclusive possession and enjoyment of Plaintiffs' Property.

28. Defendants knew or should have known that they had no surface or subsurface rights with regard to the Plaintiffs' Property after the expiration of the term of the Lease. In fact, representatives of Chesapeake were advised on numerous occasions that it had no further rights under the Lease after the date of the expiration of the extended term of the Lease.  Defendant had no right or authority to enter upon Plaintiffs' Property after the expiration of the extended term of the Lease.

29.   Despite these demands, Defendants ignored Plaintiffs' notifications and intentionally continued to trespass on Plaintiffs' Property in a manner that constitutes a willful, wanton and reckless disregard and indifference for the rights of Plaintiffs.

30.   Plaintiffs have complied with all of the terms of the Lease as it pertains to Plaintiffs.

31. As a result of Defendants' conduct, Plaintiffs have been damaged and are entitled to a judgment against Defendants to remedy Defendants' intentional trespass on Plaintiffs' Property.

WHEREFORE, Plaintiffs request that this Honorable Court enter judgment in their favor and against Defendants, jointly and severally, for their unlawful trespass on and under Plaintiffs' Property i) ordering Defendants to cease any future trespass on and under Plaintiffs' Property; ii) ordering Defendants to remove all property on the surface and subsurface of Plaintiff's property; (iii) granting and awarding Plaintiffs the remedies and/or damages permitted by law and iii) awarding Plaintiffs interest as permitted by law, attorney's fees permitted by law, costs of suit permitted by law and all other relief to which Plaintiffs are justly and legally entitled.

## COUNT III

### ALTERNATIVE PLEADING
### BREACH OF CONTRACT

32. The preceding Paragraphs 1 through 31 of this Amended Complaint are incorporated herein by reference the same as if fully set forth at length herein.

33. This cause of action is plead in the alternative subject to the foregoing Counts I and II.

34. Defendants breached the terms of the Lease by failing to comply with the terms of Paragraph 8 of the Lease. In particular, the Unit established by Defendants exceeds 640 acres and Defendants have failed to maintain a well density of at least one well per 160 acres.

35. The terms of the Lease regarding the unit size and well density are material terms of the Lease.

36. Plaintiffs have complied with all of the terms and conditions of the Lease.

37. As a result of Defendants' breach of the Lease, Plaintiffs have been damaged and are entitled to a judgment against Defendants to remedy Defendants' breach and to compensate Plaintiffs for the damages sustained as a result of the breach by Defendants.

WHEREFORE, Plaintiffs request that this Honorable Court enter judgment in their favor and against Defendants, jointly and severally, for breach of contract i) granting and awarding Plaintiffs the remedies and/or damages permitted by law, including the termination of this Lease, or alternatively, specific performance, and ii) awarding Plaintiffs interest as permitted by law, costs of suit permitted by law and all other relief to which Plaintiffs are justly and legally entitled.

Respectfully submitted,

Richard L. Huffsmith
Attorney at Law
Pa. I.D. No. 78895
26 East Tioga Street
Tunkhannock, Pennsylvania 18657
(570) 240-4400
Attorney for Plaintiffs

**VERIFICATION**

I, William N. Earnshaw, certify and affirm that the statements contained in the foregoing Complaint are true and correct to the best of my knowledge, information and belief, and am made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities.

8-1-2019, 2019

William N. Earnshaw

## **CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents."

Date: _____August 1_____, 2019                    _____
                                                                Richard L. Huffsmith

11

# Exhibit A

FILED
REGISTER & RECORDER
WYOMING CO., PA

2003 NOV 13 PM 2: 22

**THIS DEED,**

Made the 12th day of November, in the year of our Lord two thousand three.

Between, **Cree Realty**, a Pennsylvania partnership, with offices at Stauffer Industrial Park, Borough of Taylor, County of Lackawanna, and Commonwealth of Pennsylvania, **Grantor**

and

**William L. Shoemaker and Rosemary Shoemaker**, of the Township of Mehoopany, County of Wyoming and Commonwealth of Pennsylvania, **Grantees.**

Witnesseth, that in consideration of the sum of Fifty-Seven Thousand and no/100 Dollars ($57,000.00), in hand paid, the receipt whereof is hereby acknowledged; the Grantor, does hereby grant and convey to the said Grantees, their Heirs and Assigns,

All that certain piece or parcel of land situate and being in the Township of Mehoopany, County of Wyoming and Commonwealth of Pennsylvania, bounded and described as follows, as surveyed by Duane P. Bishop, R.S., #28829-E:

Beginning at a point in a stone wall being the southwest corner of the herein described parcel and also in line of lands of Dorothy Ann Schneider; thence along line of lands of said Schneider and along line of lands of Lyman G. Walters, et ux, being North 27 degrees 0 minutes 24 seconds East 1,871.69 feet, along stone wall, crossing a stream to the intersection of stone walls; thence along line of lands of Gilbert R. Sands, et ux, the following 4 courses: being (1) South 76 degrees 44 minutes 53 seconds East 814.38 feet along stone wall, crossing stream to a corner at intersection of stone walls; (2) South 17 degrees 46 minutes 25 seconds West 673.49 feet along stone wall to a corner at intersection of stone walls; (3) South 64 degrees 9 minutes 24 seconds East 378.84 feet, along stone wall to a corner; and (4) South 12 degrees 19 minutes 30 seconds West 1,256.09 feet partly along stone wall to a corner in line of lands of Ralph B. Sheldon, Jr.; thence along line of lands of Ralph B. Sheldon, Jr. and along line of lands of Henry K. and Blanche Love bearing North 69 degrees 53 minutes 37 seconds West 1,607.85 feet, partly along stone wall, crossing travel way, crossing stream, through an iron pin found on line to the place of beginning. Containing 54.5 acres, more or less, gross.

Together with the right to use with others a 60 foot wide right-of-way leading from the above described parcel to PA LR 65039, centerline of said right-of-way described as follows:

BK 0489 PG 1002

**Beginning** at a point in the southerly line of the above described parcel, said beginning point being 69 degrees 53 minutes 37 seconds West 90.30 feet from the southeast corner of the above described parcel; thence bearing South 50 degrees 29 minutes 22 seconds East 218.11 feet; thence bearing South 24 degrees 9 minutes 31 seconds East 107.49 feet; thence bearing South 43 degrees 5 minutes 56 seconds East 63.25 feet; thence bearing South 63 degrees 5 minutes 44 seconds East 130.41 feet; thence bearing South 54 degrees 58 minutes 1 second East 80.07 feet; thence bearing South 44 degrees 49 minutes 37 seconds East 54.89 feet; thence bearing South 24 degrees 30 minutes 28 seconds East 48.72 feet; thence bearing South 7 degrees 3 minutes 38 seconds East 171.31 feet; thence bearing South 3 degrees 38 minutes 19 seconds East 125.84 feet; thence bearing South 8 degrees 8 minutes 17 seconds East 307.83 feet to PA LR 65039.

**Excepting** Henry Love spring lot described as follows:

**Beginning** at a point being South 79 degrees 26 minutes 47 seconds East 492.29 feet from the southwest corner of the above described lot; thence along line of lands of Janet R. Coolbaugh, formerly Janet R. Noldy, the following 4 courses: bearing (1) North 20 degrees 6 minutes 23 seconds East 52.80 feet to a corner; (2) South 69 degrees 53 minutes 37 seconds East 51 feet; (3) South 20 degrees 6 minutes 23 seconds West 52.80 feet; and (4) North 69 degrees 53 minutes 37 seconds West 51 feet to the place of beginning. Containing 2,692.0 square feet, more or less, gross.

The above description are from a survey done by Duane P. Bishop, R.S. #28029-E, and depicted on a survey map dated December 18, 1986, which survey map is incorporated herein by reference and is recorded in Wyoming County Map Book _16_, Page _875_.

**Notes:** 1. Excepting and reserving unto Henry Love, his heirs and assigns, forever a 10 foot wide easement of way leading from Henry Love's spring lot described above to the line of other lands of said Henry Love for any and all uses and purposes and by all means of transportation, locomotion or travel by men, animals or machines, centerline of said 10 foot wide easement begins at a point South 69 degrees 53 minutes 37 seconds East 14.30 feet from the southwest corner of said spring lot; thence bearing South 20 degrees 6 minutes 23 seconds West 81.70 feet to line of other lands of Henry Love.

2.     Excepting and reserving unto Henry Love, his heirs and assigns, forever an easement of ingress, egress and regress for the maintenance, repair and replacement oif an existing water line leading from the spring house (situate on

BK0489PG1003

Henry Love's spring lot) across other lands of the predecessors in title to the line of other lands of said Henry Love.

The above-described parcel is conveyed under and subject to the terms and conditions of the Deed of Easement between Ralph B. Sheldon, Jr., et al and Charles F. Noldy and Janet R. Noldy, his wife, dated November 26, 1979 and recorded in Wyoming County Deed Book 217, page 60.

Being the same property transferred to the Grantor herein and originally described in the deed into Grantor as follows:

Beginning at the southwest corner of lot herein conveyed at corner on line of lands now or late of Schuyler Russell, deceased; thence along lands of said Russell Estate and lands of Henry Love North 30 degrees 30 minutes East 114 rods to a corner being the northwest corner of lands herein conveyed and corner of lands now or late of Eliza J. Robinson; thence along land of said Robinson lands South 73 degrees 30 minutes East 49.25 rods to a corner; thence South 20 degrees 30 minutes West 41 rods to a corner; thence 61 degrees 30 minutes East 23 rods to a corner; thence South 15 degrees 15 minutes West 76 rods to a corner, it being the southeast corner of land herein conveyed and a corner of lands of Eliza J. Robinson where land intersects lands formerly of French Estate; thence North 67 degrees 15 minutes West about 98 rods along French Estate to beginning. Supposed to contain 53 acres and 38 perches.

The partners signing below, being Edward M. Kane, Richard P. Kane, Eugene J. Kane, Jr. and Christopher J. Kane, hereby covenant that they are the only partners of Cree Realty.

Being all those premises conveyed by deed of Thomas R. Melvin, Warren DeFazio and Ralph R. Chase, Jr., Trustees under the Last Will and Testament of Benjamin David DeFazio, a/k/a Benny DeFazio, Jr., dated July 7, 1994 and recorded in Wyoming County Record Book 317, page 400.

Together with and subject to any easements, including, but not limited to, water easements, covenants, conditions, exceptions, restrictions and reservations forming the chain of title to said premises.

Together with all and singular the buildings, privileges, hereditaments and appurtenances whatsoever thereunto belonging or in anywise appertaining, and the reversions and remainders, rents, issues and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of it, the said Grantor, its heirs, administrators, executors, successors and assigns, either in law or equity, of, in and to the same thereunto belonging, or in anywise appertaining thereto.

BK0489PG1004

And the said Grantor will warrant specially the property hereby conveyed.

**In witness whereof**, the Grantor has hereunto set their hands and seals the day and year first above written.

Signed, Sealed and Delivered
    in the Presence of

Cree Realty, a Pennsylvania
General Partnership

_____
Edward M. Kane

_____
Richard P. Kane

_____
Eugene J. Kane, Jr.

_____
Christopher J. Kane

COMMONWEALTH OF PENNSYLVANIA)
                            ) ss.:
COUNTY OF LACKAWANNA        )

On this, the 12th day of November, 2003 before me, the undersigned officer, personally appeared Edward Kane, Managing Partner of the Grantor, Richard P. Kane, Partner, Eugene J. Kane, Jr., Partner and Christopher J. Kane, Partner, known to me (or satisfactorily proved) to be the person whose name is subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

**In witness whereof**, I hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires:

Notarial Seal
Christine M. Simon, Notary Public
Scranton, Lackawanna County
My Commission Expires Nov. 8, 2004

BK0489PG1005

I hereby certify that the precise residence address of the Grantees is RD#2 Bx 86A Jayne Bend Road Mehoopany Pa 18629

_____
Attorney for Grantees

Wyoming County - Recorder of Deeds
Instrument Filing

Receipt# 144946

Instr# 2003-006469   11/13/2003   14:24:54
Book# 0489 Page# 1002
Remarks:  PD BY CATHERINE J GARBUS
CREE REAL TO SHOEMAKER

DEED                           15.00
DEED - WRIT                      .50
DEED - RTT STATE              570.00
TUNKHANNOCK AREA              285.00
MEHOOPANY TWP                 285.00
DEED - HOUSING FEE             5.00
J.C.S. / A.T.J.               10.00
CO IMPROVEMENT FND             2.00
REC. IMPRVMT FUND              3.00
                         -----------
Cash                        $1,175.50
Total Received.......       $1,175.50

BK 0489PG1006

Exhibit B

## OIL AND GAS LEASE

THIS AGREEMENT  made and entered into this 12<u>th</u> day of <u>October, 2007</u>  by and between

William L Shoemaker and Rosemary Shoemaker, husband and wife

RR 2 Box 88 A

Mehoopany PA 18629

hereinafter called the Lessor  and MAGNUM LAND SERVICES, LLC  P O  Box 1069  Traverse City  Michigan 49685-1069  hereinafter called the Lessee  WITNESSETH

1   That the Lessor  for and in consideration of Ten dollars ($10 00) and other valuable consideration in hand paid by the Lessee  the receipt of which is hereby acknowledged  and the covenants and agreements hereinafter contained  does hereby lease and let exclusively unto the Lessee  its successors and assigns  all that certain tract(s) of land hereinafter described  for the purpose of exploring for by geophysical and other methods  drilling  operating for producing  removing and marketing oil gas  and of injecting and storing  air  gas, brine and other substances from any source and into any subsurface strata  other than potable water strata  and workable coal strata (including but not limited to the right to inject into any wells on the leasehold property and to otherwise conduct all such secondary or tertiary operations as may be required in the opinion of the Lessee)  the right to conduct surveys and to transport by pipelines or otherwise across and through said lands oil  gas and their constituents from the subject and other lands  regardless of the source of such production or the location of the wells  which right to transport production from other properties across the leasehold premises shall survive the term of this lease for so long as the transportation of such production may be desired by the Lessee and of placing of tanks  equipment  roads and structures thereon to procure and operate for the said products  together with the right to enter into and upon the leased premises at all times for the aforesaid purposes

Said land is situated in Township(s) o f <u>MEHOOPANY</u> County of <u>WYOMING</u>  and Commonwealth of <u>PENNSYLVANIA</u>  bounded substantially by lands now and/or formerly owned as follows

<u>Tax ID No   11 70-13 (67 84 acres) , 11-70 15 (54 50 acres)</u>

On the North by land of  VAUGHAN

On the East by land of  SUSQUEHANNA RIVER

On the South by land of  LOIS

On the West by land of  WALTERS, SCHNEIDER

being all the property owned by Lessor or to which the Lessor may have any rights in said Section/Lot/District or adjoining Sections/Lots/Districts  containing <u>122 acres</u>  more or less  and being the property described in <u>Deed Volume/Page 364/104 and 489/1002</u> of the <u>Wyoming</u> County Record of Deeds

2   This lease shall continue in force and the rights granted hereunder be quietly enjoyed by the Lessee for a term of five (5) years and so much longer thereafter as oil gas  and/or coalbed methane gas or their constituents are produced or are capable of being produced on the premises in paying quantities  in the judgment of the Lessee  or as the premises shall be operated by the Lessee in the search for oil gas  and/or coalbed methane gas and as provided in Paragraph 7 following

3   This is a paid up <u>bonus lease</u>  A well shall be deemed commenced when preparations for drilling have been commenced

4   In consideration of the premises the Lessee covenants and agrees

(A)  To deliver to the credit of the Lessor in tanks or pipelines  as royalty  free of cost  one eighth (1/8) of all oil produced and saved from the premises  or at Lessee s option to pay Lessor the market price for such one-eighth (1/8) royalty oil at the published rate for oil of like grade and gravity prevailing on the date such oil is sold into tanks or pipelines

(B)  To pay to the Lessor  as royalty for the oil  gas  and/or coalbed methane gas marketed and used off the premises and produced from each well drilled thereon  the sum of one-eighth (1/8) of the price paid to Lessee per thousand cubic feet of such oil  gas  and/or coalbed methane gas so marketed and used (~~less or not any post-production costs paid by the Lessee to prepare for and/or deliver the~~ ~~oil, gas, and/or coalbed methane gas for sale  including charges for gathering  transportation, dehydration, extraction of products and~~ ~~compression paid by Lessee to deliver the oil, gas, and/or coalbed methane gas for sale~~   Payment of royalty for oil gas  and/or coalbed methane gas marketed during any calendar month to be on or about the 60th day after receipt of such funds by the Lessee

(C)  Lessee shall also deduct from royalty payments in (A) and (B) above Lessor's share of any severance or other tax imposed by any government body

5   All money due under this lease shall be paid or tendered to the Lessor by check made payable to the order of and mailed to <u>LESSOR         at   ABOVE ADDRESS   </u> and the said named person shall continue as Lessor's agent to receive any and all sums payable under this lease regardless of changes in ownership in the premises  or in the oil  gas  and/or coalbed methane gas or their constituents  or in the rentals or royalties accruing hereunder until delivery to the Lessee of notice of change of ownership as hereinafter provided

6   In the event a well drilled hereunder is a producing well and the Lessee is unable to market the production therefrom  or should production cease from a producing well drilled on the premises  or should the Lessee desire to shut in production  the Lessee agrees to pay the Lessor  commencing on the date one year from the completion of such producing well or the cessation of production, or the shutting in of producing wells  a <u>shut in</u> royalty of <u>$10 00</u> per acre per year until production is marketed and sold off the premises or such well is plugged and abandoned according to law

7   The consideration  land rentals or royalties paid and to be paid as herein provided  are and will be accepted by the Lessor as adequate and full consideration for all the rights herein granted to the Lessee and the further right of drilling or not drilling on the leased premises  whether to offset producing wells on adjacent or adjoining lands or otherwise  as the Lessee may elect

1-291554-000

8    Lessor hereby grants to the Lessee the right at any time to consolidate the leased premises or any part thereof or strata therein with other lands to form a oil gas and/or coalbed methane gas development unit of not more than 640 acres or such larger unit as may be required by state law or regulation for the purpose of drilling a well thereon and Lessee shall be required to maintain a well density of at least 1 well per 160 acres contained in such unit  Any well drilled on said development unit whether or not located on the leased premises shall nevertheless be deemed to be located upon the leased premises within the meaning and for the provisions and covenants of this lease to the same effect as if all the lands comprising said unit were described in and subject to this lease provided however that only the owner of the lands on which such a non-coalbed methane gas well is located may take gas for use in one dwelling house on such owner's lands in accordance with the provisions of this lease and provided further that the Lessor agrees to accept  in lieu of the one-eighth (1/8) oil gas and/or coalbed methane gas royalty hereinbefore provided  that proportion of such one-eighth (1/8) royalty which the acreage consolidated bears to the total number of acres comprising said development unit  The Lessee shall effect such consolidation by executing a declaration of consolidation with the same formality as this oil gas and/or coalbed methane gas lease setting forth the leases or portions thereof consolidated the royalty distribution and recording the same in the recorder's office at the courthouse in the county in which the leased premises are located and by mailing a copy thereof to the Lessor at the address hereinabove set forth unless the Lessee is furnished with another address  If the well on said development unit shall thereafter be shut in the well rental for shut-in royalty hereinbefore provided for such use shall be payable to the owners of the parcels of land comprising said unit in the proportion that the acreage of each parcel bears to the entire acreage consolidated  Lessee shall have the right to amend  alter or correct any such consolidation at any time in the same manner as herein provided

9    In case the Lessor owns a less interest in the above described premises than the entire and undivided fee simple therein  then the royalties and rentals herein provided for shall be paid to the Lessor only in the proportion which such interest bears to the whole and undivided fee  If said land is owned by two or more parties  or the ownership of any interest therein should hereafter be transferred by sale  devise or operation of law said land  nevertheless may be held  developed and operated as an entirety  and the rentals and royalties shall be divided among and paid to such several owners in the proportion that the acreage owned by each such owner bears to the entire leased acreage

10    The rights of Lessor and Lessee hereunder may be assigned in whole or part  No change in ownership of Lessor's interest (by assignment or otherwise) shall be binding on Lessee until Lessee has been furnished with notice  consisting of certified copies of all recorded instruments or documents and other information necessary to establish a complete chain of record title from Lessor  and then only with respect to payments thereafter made  No other kind of notice  whether actual or constructive  shall be binding on Lessee  No present or future division of Lessor's ownership as to different portions or parcels of said land shall operate to enlarge the obligations or diminish the rights of Lessee  and all Lessee s operations may be conducted without regard to any such division  If all or any part of this lease is assigned  no leasehold owner shall be liable for any act or omission of any other leasehold owner

11    Lessee shall have the right to assign and transfer the within lease in whole or in part  and Lessor waives notice of any assignment or transfer of the within lease  Failure of payment of rental or royalty on any part of this lease shall not void this lease as to any other part  Lessor agrees that when and if the within lease is assigned the Lessee herein shall have no further obligations hereunder  The Lessor further grants to the Lessee  for the protection of the Lessee s interest hereunder  the right to pay and satisfy any claim or lien against the Lessor's interest in the premises as herein leased and thereupon to become subrogated to the rights of such claimant or lien holder  and the right to direct payment of all rentals and royalties to apply on the payment of any existing liens on the premises

12    Lessee shall bury when so requested by the Lessor  all pipelines used to conduct oil gas  and/or coalbed methane gas to  on through and off the premises and pay all damages to growing crops and drainage tiles and/or other artificial drainage fixture caused by operations under this lease  Lessee agrees to restore the premises in accordance with state laws  Any damages if not mutually agreed upon  to be ascertained and determined by three disinterested persons  one thereof to be appointed by the Lessor  one by the Lessee and the third by the two so appointed  and the award of such three persons shall be final and conclusive and binding on all parties  Each party shall pay the cost of their appraiser and shall share the cost of the third appraiser  Arbitration shall be mandatory  No well shall be drilled within 200 feet of any existing barn or dwelling

13    Lessor agrees to abide by all reasonable safety policies of Lessee with respect to Lessee s operations  including but not limited to the following  No structures shall be erected or moved on a location within two hundred feet (200 ) of a well or tank battery  or within twenty five feet (25 ) of Lessee s pipelines

14    Lessee shall have the privilege of using sufficient oil gas  coalbed methane gas  water  and/or minerals for operating on the premises and the right at any time during or after the expiration of this lease to remove all pipe  well casing  machinery  equipment or fixtures placed on the premises  The Lessee shall have the right to surrender this lease or any portion thereof by written notice to the Lessor describing the portion which it elects to surrender  or by returning the lease to the Lessor with the endorsement of surrender thereof  or by recording the surrender or partial surrender of this lease  any of which shall be a full and legal surrender of this lease as to all of the premises or such portion thereof as the surrender shall indicate and a cancellation of all liabilities under the same of each and all parties hereto relating in any way to the portion or all the premises indicated on said surrender  and the land rental hereinbefore set forth shall be reduced in proportion to the acreage surrendered

15    In the event the Lessee is unable to perform any of the acts to be performed by the Lessee by reason of force majeure  including but not limited to acts of God  strikes  riots and governmental restrictions including but not limited to restrictions on the use of roads  this lease shall nevertheless remain in full force and effect until the Lessee can perform said act or acts and in no event shall the within lease expire for a period of ninety (90) days after the termination of any force majeure

16    In the event Lessor considers that Lessee has not complied with any of its obligations hereunder  either express or implied  Lessor shall notify Lessee in writing setting out specifically in what respects Lessee has breached this contract  Lessee shall then have thirty (30) days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by Lessor  The service of said notice shall be precedent to the bringing of any action by Lessor on said lease for any cause  and no such action shall be brought until the lapse of thirty (30) days after service of such notice on Lessee  Neither the service of said notice nor the doing of any acts by Lessee aimed to meet all or any part of the alleged breaches shall be deemed an admission or presumption that Lessee has failed to perform all its obligations hereunder

17    In consideration of the acceptance of this lease by the Lessee  the Lessor agrees for himself and his heirs  successors and assigns  that no other lease for the minerals covered by this lease shall be granted by the Lessor during the term of this lease or any extension or renewal thereof granted to the Lessee herein

18    Lessor hereby warrants that Lessor is not currently receiving any bonus  rental  production royalty as the result of any prior oil and gas lease covering any or all of the subject premises  and that there are no commercially producing wells currently existing on the subject premises  or upon other lands within the boundaries of a drilling or production unit utilizing all or a part of the subject premises

19  This Lease may  at Lessee s option  be extended as to all or part of the lands covered hereby for one additional primary term of Five (5) years commencing on the date that the lease would have expired but for the extension   Lessee may exercise its option by paying or tendering to Lessor an extension payment of $___200 00_____ per acre for the land then covered by the extended lease said bonus to be paid or tendered to Lessor in the same manner as provided in Paragraph numbered 6 hereof with regard to the method of payment of shut in royalties   If Lessee exercises this option  the primary term of this lease shall be considered to be continuous  commencing on the date of the lease and continuing from that date to the end of the extended primary term

20  All covenants and conditions between the parties hereto shall extend to their heirs  personal representatives  successors and assigns  and the Lessor hereby warrants and agrees to defend the title to the lands herein described   It is mutually agreed that this instrument contains and expresses all of the agreements and understandings of the parties in regard to the subject matter thereof  and no implied covenant  agreement or obligation shall be read into this agreement or imposed upon the parties or either of them   Lessor further agrees to sign such additional documents as may be reasonably requested by Lessee to perfect Lessee s title to the oil  gas and/or coalbed methane gas leased herein and such other documents relating to the sale of production as may be required by Lessee or others   Lessor grants Lessee a power of attorney to execute indemnifying division orders for the sale of oil  gas  and/or coalbed methane gas

21  Notwithstanding anything contained herein to the contrary it is understood and agreed by the parties to this oil and gas lease that if the Lessor is found to be in violation of Clean and Green by the local Wyoming County or State of Pennsylvania Assessor (taxing authority) as a result of the operations of the Lessee  and said taxing authority assesses additional cost  taxes  penalties and or fines against the Lessor  then the Lessee agrees to pay all such additional cost  taxes  penalties and fines so levied against the Lessor

22  Notwithstanding anything contained herein to the contrary it is understood and agreed by the parties to this lease that the Lessee shall be solely responsible for all damage to property and injury to persons  including death  by reason of, or in connection with its operations hereunder and does hereby agree to protect  save harmless  and indemnify Lessor from and against any and all claims and liability for damages to property and injuries  including death  to persons including  but not limited to  Lessee s employees  agents  and contractors  such damages or injuries arising out of  or in connection with Lessee s operations hereunder  and Lessee shall  at Lessee s sole expense  handle all such claims  defend lawsuits or other actions which may be brought against Lessor therein  pay all judgments rendered against Lessor therein  and reimburse Lessor for any expenditure which it may make on account thereof  including but not limited to Lessor's attorney fees  unless such damage or injury is caused solely by Lessor's acts  omissions  or negligence

23  Notwithstanding anything contained herein to the contrary it is understood and agreed by the parties to this lease that the it is hereby agreed that the location of any drilling sites  access roads  or pipelines to be placed on said lands shall be located by mutual consent between Lessor and Lessee  however  Lessor's consent shall not be unreasonably withheld

24  Notwithstanding anything contained herein to the contrary it is understood and agreed by the parties to this lease that the Lessee agrees to notify Lessor at least 30 days prior to the construction of well sites  access roads  or pipelines to allow the Lessor to harvest any marketable timber  or domesticated crops

25  Notwithstanding anything contained herein to the contrary it is understood and agreed by the parties to this lease that unless the lands covered by this lease are pooled  communitized  or included in a production unit  the Lessee agrees not to assert the right to transport by pipelines or otherwise across and through said lands  oil  gas and their constituents from other lands

26  See addendum attached hereto and made a part hereof

IN WITNESS WHEREOF the Lessor(s) have hereunder set their hands

Lessor/s

_William L Shoemaker_
William L Shoemaker

_Rosemary Shoemaker_
Rosemary Shoemaker

INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____PENNSYLVANIA_____ )
                                                                  } SS
COUNTY OF _____WYOMING_____ )

On this  the 12th day of October  2007  before me William L  Shoemaker and Rosemary Shoemaker

known to me (or satisfactorily proven) to be the person whose name(s) is/are  subscribed to the within instrument  and acknowledged that he/she/they executed the same for the purposes therein contained

IN WITNESS WHEREOF  I hereunto set my hand and official seal

**Commissioner of Deeds**
**Commonwealth of Pennsylvania**
Scott Shaffer
**Warren, Pennsylvania - Warren County**
**My Commission Expires April 24, 2008**

Commissioner of Deeds

This instrument was prepared by  John E  Przepiora for Magnum Land Services  LLC  Of  3180 Racquet Club Dr  Suite B  Traverse City  MI 49684

Addendum

Attached to and made a part of that certain Oil and Gas Lease dated <u>October 12, 2007</u>  by and between

William L. Shoemaker and Rosemary Shoemaker, husband and wife

RR 2 Box 86 A

Mehoopany PA 18629
 as Lessor  and Magnum Land Services  LLC  as Lessee  covering land in Wyoming County  Pennsylvania  more particularly described in the above referenced lease

Should there be any inconsistency between the terms and conditions set forth in the main body of this lease, and the terms and conditions specified in the Addendum the provisions of the Addendum shall prevail and supersede the inconsistent provisions of the main body of this lease

1   It is agreed and understood that the Lessee shall repair and restore the surface of said premises as nearly as possible  including any damage to the existing drainage tile  as a result of the Lessee s operations  to the condition in which said land existed at the time of the commencement of drilling operations upon the above described land   This work shall be completed within 90 days  weather permitting  after the cessation of the drilling operations upon the said lands   This work shall be done at the sole expense of the Lessee

2   Following Lessee s operation on said lands  Lessee shall be responsible for restoring the surface of the land that was disturbed by said operations to as near its original condition as is reasonably possible  Restoration shall include but not be limited to leveling and seeding the locations and roads used in Lessee s operations  removal of all tanks and other associated equipment and the cleanup of any products spills that may have occurred

3   Location of any well(s)  access road(s)  pipeline route(s) and tank battery(ies) shall be approved by the Lessors or one of their representatives in writing prior to location thereof   Such approval shall not be unreasonably withheld or delayed   Upon receipt of Lessee s written location approval form  Lessor shall have thirty (30) days from the date of receipt to approve and return said form or to advise Lessee in writing of their disapproval of a specific location(s) associated with said form and provide Lessee with an alternate location(s) that Lessee deems to be economically feasible and at a legal location pursuant to the rules and regulations of the State/Commonwealth   Lessor's failure to notify and return Lessee s written location approval form or to provide Lessee with such alternate location(s) within thirty (30) days shall constitute Lessor's approval of the location(s) associated with said form

4   Lessee agrees not to use any water from Lessor's ponds  springs  or creeks without Lessor's written consent

5   Any and all pipeline laid by Lessee shall be buried to a minimum depth of 32 inches below ground level

6   Any access road for drilling operations shall not exceed 40 feet in width during actual drilling operation   Lessee agrees to remove top soil from access road and place beside said access road for restoration work after operations are completed   In the event of a producing well  access road shall be to a maximum width of 15 feet and maintained for access to well for maintenance   If a dry hole is drilled  Lessee agrees to restore said drillsite area and access road to the condition these areas existed  as close as is practicable  prior to drilling operations commenced  including replacing top soil back over access road and drill site area and where deemed necessary to bind the soil to prevent substantial erosion and sedimentation and compression of areas disturbed

7   <u>Lessee agrees it will protect and save and keep Lessor harmless and indemnified against and from any penalty or damage or charges imposed for  any violation of any laws or ordinances, whether occasioned by Lessee or those holding under Lessee, and Lessee will at all times  protect, indemnify, and save and keep harmless the Lessor against and from any and all claims, liens, loss, damage or expense, including all claims for injury to any person or property whomsoever or whatsoever arising out of or caused by any actions or omissions of the Lessee or those holding under Lessee.</u>

8   Lessee and Lessor covenant and agree that Lessee has not acquired and does not acquire the rights for the drilling of an underground gas or oil storage well by the execution of this oil and gas lease

9   Any and all damages of Lessors crops or Lessor's tenant's crops shall be paid for by Lessee based on the current value in the area of whatever type of crops are being cultivated at the time of the disturbance

10   Mechanic s liens  if any  placed on the leased premises by Lessee  Lessee s contractors and/or subcontractors shall not extend to the landowners royalty interest or any surface or other fee interest of the land owners in the premises described in the original oil and gas lease

11   Lessee shall have Lessor's current water supply sampled and tested prior to the spudding of any well drilled on the leased premises   Should Lessor experience a material adverse change in the quality of Lessor's water supply during or immediately after the completion of Lessee s drilling operations  Lessee shall  within 48 hours of Lessor's written request  sample and test Lessor's water supply at Lessee s expense   Should such test reflect a material adverse change as the result of Lessee s drilling operations on the leased premise  Lessee agrees to provide Lessor with potable water until such time as Lessor's water source has been repaired or replaced with a source of substantially similar quality

12   Lessee agrees to pay a fair market value for any and all damages resulting to timber and/or forest products and all other improvements on the leased premises caused by their operations on the leased premises under the terms of this lease  However  any damages not mutually agreed upon  shall be ascertained and determined by three disinterested persons  one thereof  appointed by Lessor  one by Lessee  and the third by the two so appointed and the award of such three persons shall be final and conclusive and binding on all parties   Each party shall pay the cost of their appraiser and shall share the cost of the third appraiser

13   Notwithstanding anything contained herein to the contrary it is understood and agreed by the parties to this oil and gas lease that if the Lessor is found to be in violation of Clean and Green by the local Wyoming County or State of Pennsylvania Assessor  (taxing authority) and/or the Conservation Reserve Enhancement Program (CREP) as a result of the operations of the Lessee on Lessor's lands  and said taxing authority and/or program assesses additional costs  taxes  penalties and or fines against the Lessor  then the Lessee agrees to pay all such additional cost  taxes  penalties and fines so levied against the Lessor

14   <u>Lessee shall be responsible for the payment of any increase in property taxes, if any, levied upon Lessor as a result of Lessee s Oil and Gas operations</u>

15   <u>It is mutually agreed that Lessor may elect to receive annually  in lieu of payment for an allotment of three hundred thousand cubic feet of gas, a  cash equivalency  payment times the annualized wellhead price for the gas sold from a well drilled upon the leased premises   Said payment shall be made annually by Lessee on or before the end of the first quarter of each calendar year.</u>

16   <u>Commencement of operations shall be defined as Lessee entering upon the herein described premises with equipment necessary to build any access road(s) for the drilling of a well subsequently followed by a drilling rig for the spudding of the well to be drilled</u>

17   <u>Lessee agrees to provide Lessor a written notice of any assignment resulting in 51% or greater interest of the lease within fourteen (14) days of such assignment</u>

18.  Lessee agrees to pay Lessor a location fee of Two Thousand Five Hundred and xx/100 ($2500.00) dollars upon commencement of drilling operations on the leased premises.

19.  Lessor shall have the right to audit Lessee for the purpose of determining the quantity of said gas and/or oil produced, metered and sold from the premises. Said audit shall be conducted at Lessee's place of business and Lessor agrees to give Lessee thirty (30) days notice to conduct any such audit.

20.  Lessee does not acquire, pursuant to the terms of this oil and gas lease, the right to transport foreign gas across the premises described in this lease. Lessee has acquired only the right to transport and convey all oil and gas produced from the premises described and all oil and gas produced from the premises unitized herewith.

21.  Lessee and Lessor covenant and agree that Lessee has not acquired and does not acquire the rights to develop and or produce coal bed methane gas by the execution of this oil and gas lease without prior written consent from Lessor.

Lessor(s)

_____

_____

_William L Shoemaker_
William L. Shoemaker

_Rosemary Shoemaker_
Rosemary Shoemaker

Exhibit C

**Wyoming County**
One Courthouse Square
Tunkhannock, PA 18657
570-996-2361



0288411-0005K

| RECORDING COVER PAGE | Page 1 of 6 |

Instrument Type: Deed
Recorded Date: 09/14/2011 09:19:08 AM          Transaction #:          291688
Instrument Number: 2011-6364                   Instrument Page Count: 5

RETURN TO:
BOYLE SANDRA D ESQ

SUBMITTED BY:
BOYLE SANDRA D ESQ

INSTRUMENT REFERENCE NAME: SHOEMAKER TO EARNSHAW

| CONSIDERATION/SECURED AMT: | $449,000.00 |
| FEES / TAXES: | |

| RF:Deed | $47.00 |
| State RTT | $4,490.00 |
| Tunkhannock Area RTT | $2,245.00 |
| Mehoopany Township RTT | $2,245.00 |
| Additional Pages Fee | $2.00 |
| | |
| Total: | $9,029.00 |

Document Number: 2011-6364
Recorded Date: 09/14/2011

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Wyoming County, Pennsylvania



*Dennis Montross*

Dennis Montross
Recorder of Deeds

## DO NOT DETACH
### THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT
NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT
FOR ANY ADDITIONAL INFORMATION.

**DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.**

**RECORDED WYOMING COUNTY, PA**                                    Page 2 of 6

# This Deed,

*Made the 14th day of Sep<sup>t</sup>.   in the year of our Lord Two Thousand Eleven (2011)*

BETWEEN                *WILLIAM L. SHOEMAKER, a widower, of the
                        Township of Mehoopany, County of Wyoming and
                        Commonwealth of Pennsylvania,*

-GRANTOR-

*AND*

*WILLIAM N. EARNSHAW, of 1031 Jaynes Bend Road,
Mehoopany, PA 18629 and HELEN A. EARNSHAW, of
42 Osborne Hill Road, Sandy Hook, Connecticut, 06482,
Tenants In Common;*

-GRANTEES-

**WITNESSETH,** that in consideration of FOUR HUNDRED FORTY-NINE THOUSAND and 00/100 ($449,000.00) DOLLARS in hand paid, the receipt whereof is hereby acknowledged; the Grantor does hereby grant and convey to the said Grantee, his Heirs and Assigns,

All that certain piece or parcel of land situate and being in the Township of Mehoopany, County of Wyoming and Commonwealth of Pennsylvania, bounded and described as follows, as surveyed by Duane P. Bishop, R.S. #28829-E:

**BEGINNING** at a point in a stone wall being the southwest corner of the herein described parcel and also in line of lands of Dorothy Ann Schneider;

THENCE along line of lands of said Schneider and along line of lands of Lyman G. Walters, et ux., being North 27 degrees 0 minutes 24 seconds East 1,871.69 feet, along stone wall, crossing a stream to the intersection of stone walls;

THENCE along line of lands of Gilbert R. Sands, et ux., the following 4 courses:

**RECORDED WYOMING COUNTY, PA**

being 1) South 76 degrees 44 minutes 53 seconds East 814.38 feet along stone wall, crossing stream to a corner at intersection of stone walls; 2) South 17 degrees 46 minutes 25 seconds West 673.49 feet along stone wall to a corner at intersection of stone walls; 3) South 64 degrees 9 minutes 24 seconds East 378.84 feet, along stone wall to a corner; and 4) South 12 degrees 19 minutes 30 seconds West 1,256.09 feet partly along stone wall to a corner in line of lands of Ralph B. Sheldon, Jr.;

THENCE along line of lands of Ralph B. Sheldon, Jr., and along line of lands of Henry K. and Blanche Love bearing North 69 degrees 53 minutes 37 seconds West 1,607.85 feet, partly along stone wall, crossing travel way, crossing stream, through an iron pin found on line to the place of BEGINNING.

CONTAINING 54.5 acres, more or less, gross.

TOGETHER with the right to use with others a 60 foot wide right-of-way leading from the above described parcel to PA LR 65039, centerline of said right-of-way described as follows:

BEGINNING at a point in the southerly line of the above described parcel, said beginning point being 69 degrees 53 minutes 37 seconds West 90.30 feet from the southeast corner of the above described parcel;

THENCE bearing South 50 degrees 29 minutes 22 seconds East 218.11 feet; THENCE bearing South 24 degrees 9 minutes 31 seconds East 107.49 feet; THENCE bearing South 43 degrees 5 minutes 56 seconds East 63.25 feet; THENCE bearing South 63 degrees 5 minutes 44 seconds East 130.41 feet; THENCE bearing South 54 degrees 58 minutes 1 second East 80.07 feet; THENCE bearing South 44 degrees 49 minutes 37 seconds East 54.89 feet; THENCE bearing South 24 degrees 30 minutes 28 seconds East 48.72 feet; THENCE bearing South 7 degrees 3 minutes 38 seconds East 171.31 feet; THENCE bearing South 3 degrees 38 minutes 19 seconds East 125.84 feet; THENCE bearing South 8 degrees 8 minutes 17 seconds East 307.83 feet to PA LR 65039.

EXCEPTING Henry Love spring lot described as follows:

BEGINNING at a point being South 79 degrees 26 minutes 47 seconds East 492.29 feet from the southwest corner of the above described lot; THENCE along line of lands of Janet R. Coolbaugh, formerly Janet R. Noldy, the following 4 courses: bearing 1) North 20 degrees 6 minutes 23 seconds East 52.80 feet to a corner; 2) South 69 degrees 53 minutes 37 seconds East 51 feet; 3) South 20 degrees 6 minutes 23 seconds West 52.80 feet; and 4) North 69 degrees 53 minutes 37 seconds West 51 feet to the place of BEGINNING.

CONTAINING 2,692.8 square feet, more or less, gross.

The above description are from a survey done by Duane P. Bishop, R.S. #28829-E, and depicted on a survey map dated December 18, 1986, which survey map is incorporated herein by reference and is recorded in Wyoming County Map Book 16, at page 875.

Notes: 1)  Excepting and reserving unto Henry Love, his heirs and assigns, forever a 10 foot wide easement of way leading from Henry Love's spring lot described above to the line of other lands of said Henry Love for any and all uses and purposes and by all means of transportation, locomotion or travel by men, animals or machines, centerline of said 10 foot wide easement begins at a point, South 69 degrees 53 minutes 37 seconds East 14.30 feet from the southwest corner of said spring lot; THENCE bearing South 20 degrees 6 minutes 23 seconds West 81.70 feet to line of other lands of Henry Love.

2)  Excepting and reserving unto Henry Love, his heirs and assigns, forever an easement of ingress, egress and regress for the maintenance, repair and replacement of an existing water line leading from the spring house (situate on Henry Love's spring lot) across other lands of the predecessors in title to the line of other lands of said Henry Love.

The above-described parcel is conveyed under and subject to the terms and conditions of the Deed of Easement between Ralph B. Sheldon, Jr., et al., and Charles F. Noldy and Janet R. Noldy, his wife, dated November 26, 1979 and recorded in Wyoming County Deed Book 217, Page 60.

BEING the same property transferred to the Grantor herein and originally described in the Deed into Grantor as follows:

BEGINNING at the southwest corner of lot herein conveyed at corner on line of lands now or late of Schuyler Russell, deceased; THENCE along lands of said Russell Estate and lands of Henry Love North 30 degrees 30 minutes East 114 rods to a corner being the northwest corner of lands herein conveyed and corner of lands now or late of Eliza J. Robinson; THENCE along land of said Robinson lands South 73 degrees 30 minutes East 49.25 rods to a corner; THENCE South 20 degrees 30 minutes West 41 rods to a corner; THENCE 61 degrees 30 minutes East 23 rods to a corner; THENCE South 15 degrees 15 minutes West 76 rods to a corner, it being the southeast corner of land herein conveyed and a corner of lands of Eliza J. Robinson where land intersects lands formerly of French Estate; THENCE North 67 degrees 15 minutes West about 98 rods along French Estate to BEGINNING.  Supposed to contain 53 acres and 38 perches.

BEING the same premises conveyed to William L. Shoemaker and Rosemary Shoemaker, his wife, by Deed of Cree Realty, dated November 12, 2003, and recorded in Wyoming County Record Book 489 at Page 1002.  The said Rosemary Shoemaker died on January 27, 2011, thereby vesting title to the above-described premises to her surviving spouse, William L. Shoemaker, by operation of law.

TOGETHER with and subject to any easements, including, but not limited to, water easements, covenants, conditions, exceptions, restrictions or reservations forming the chain of title to said premises.

TOGETHER with all of the oil, gas and minerals in, on and under the within described premises and that may be produced from the within described premises including the mining, drilling, exploring, operating an developing said lands for oil, gas and minerals and for handling, transporting and marketing the same therefrom.

SUBJECT TO AND TOGETHER with that certain oil and gas lease and any assignments and conveyances thereof between William L. Shoemaker and Rosemary Shoemaker, husband and wife, as Lessor and Magnum Land Services, LLC, as Lessee, dated October 12, 2007, for which the Memorandum of Lease was recorded November 29, 2007 in the Office of the Recorder of Deeds of Wyoming County, Pennsylvania to Instrument Number 2007-4872; Grantor hereby grants and conveys to Grantees who shall receive and enjoy the undivided interest in and to all bonuses, rents, royalties and other benefits which may accrue under the terms of said lease insofar as it covers the within described land from and after the date hereof, precisely as if the Grantees here had been at the date of the making of said lease the owners of the undivided interest in and to the lands described and the Lessors to said lease. Grantor agrees to execute such further assurances as may be requisite for the full and complete enjoyment of the rights herein granted.

SUBJECT TOAND TOGETHER WITH that certain Pipeline Right of Way Option agreement and any assignments and conveyances thereof between William L. Shoemaker and Rosemary Shoemaker as landowners and Appalachia Midstream Services LLC dated July 1, 2010 and recorded September 14, 2010 in the Office of the Recorder of Deeds of Wyoming County, Pennsylvania to Instrument Number 2010-8835; Grantor hereby grants and conveys to Grantees who shall receive and enjoy the undivided interest in and to all payments, damages and benefits which may accrue under the terms of said Pipeline Right of Way Option Agreement insofar as it covers the within described land from and after the dated hereof, precisely as if the Grantees herein had been at the dated of the making of said Agreement the owners of the undivided interest in and to the land described. Grantor agrees to execute such further assurances as may be requisite for the full and complete enjoyment of the rights herein granted.

SUBJECT to all conditions, reservations, limitations and restrictions as are contained in prior deeds forming chain of title.

**And** the said Grantor Will Warrant Specially the property hereby conveyed.

**In Witness Whereof,** the Grantor has  hereunto set his hand and seal the day and year first above written.

Signed, Sealed and Delivered
in the presence of

_____                    _William L. Shoemaker_
                                                                                        WILLIAM L. SHOEMAKER

Commonwealth of Pennsylvania          :
                                                                :
County of Wyoming                               :

    On this, the 14th day of September, A.D. 2011, before me, A Notary Public, the undersigned officer, personally appeared **WILLIAM L. SHOEMAKER, a widower,** known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

    In Witness Whereof, I hereunto set my hand and official seal.

                                                                        _Ann E. Henry_

    ┌─────────────────────────────────────┐
    │          NOTARIAL SEAL              │
    │   ANN E. HENRY, NOTARY PUBLIC       │        _____
    │ TUNKHANNOCK BORO., WYOMING CO.      │           Title of Officer
    │ MY COMMISSION EXPIRES FEB. 11, 2015 │
    └─────────────────────────────────────┘

    **I Hereby Certify,** that the precise residence of the Grantees is

                                        1031 Jaynes Bend Road
                                        Mehoopany, Pa. 18629

                                        _Sandra A. By E_

            Attorney for          _Grantees_

Richard L. Huffsmith
Pa. I.D. No. 78895
26 East Tioga Street
Tunkhannock, Pennsylvania 18657
(570) 240-4400
Attorney for Plaintiffs

| | | |
|---|---|---|
| WILLIAM N. EARNSHAW | : | IN THE COURT OF COMMON PLEAS |
| 832 JAYNES BEND ROAD | : | OF WYOMING COUNTY, PA |
| MEHOOPANY, PA  18629 | : | |
| | : | |
| AND | : | |
| | : | |
| HELEN A. EARNSHAW | : | |
| 42 OSBORNE HILL ROAD | : | |
| SANDY HOOK, CT  06482 | : | |
|       Plaintiffs | : | |
| | : | CIVIL ACTION |
|    v. | : | |
| | : | |
| CHESAPEAKE APPALACHIA, L.L.C. | : | |
| 6100 N. WESTERN AVENUE | : | |
| OKLAHOMA CITY, OK  73118 | : | |
| | : | |
| AND | : | |
| | : | |
| and EQUINOR USA ONSHORE | : | CASE NO. _2019-850_ |
| PROPERTIES, INC. formerly known as | : | |
| STATOIL USA ONSHORE PROPERTIES, | : | |
| INC. | : | |
| 2103 CITY WEST BLVD. | : | |
| SUITE 800 | : | |
| HOUSTON, TX  77042 | : | |
|       Defendants. | : | |

## CERTIFICATE OF SERVICE

I, **RICHARD L. HUFFSMITH, ESQUIRE**, do hereby certify that I have served a true and correct copy of the foregoing **Complaint** to the following entities by placing the same in the United States Certified Mail, Return Receipt Requested on the 1st day of August, 2019, addressed as follows:

Chesapeake Appalachia, L.L.C.
6100 N. Western Avenue
Oklahoma City, Oklahoma 73118

Equinor USA Onshore Properties, Inc.
2103 City West Boulevard,
Suite 800
Houston, Texas 77042


Date:  August 1, 2019

Richard L. Huffsmith
Counsel for Plaintiffs
Pa. ID No. 78895
26 East Tioga Street.
Tunkhannock, PA 18657
(570) 240-4400