# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM N. EARNSHAW and
HELEN A. EARNSHAW,

    Plaintiffs,

    v.

CHESAPEAKE APPALACHIA,
L.L.C. and EQUINOR USA
ONSHORE PROPERTIES, INC. f/k/a
USA ONSHORE PROPERTIES, INC.,

    Defendants.

NO. 3:19-CV-1479

(JUDGE CAPUTO)

## **MEMORANDUM**

Presently before me is the Motion to Remand pursuant to 28 U.S.C. § 1447(c) (Doc. 8) filed by Plaintiffs William N. Earnshaw and Helen A. Earnshaw (collectively, where appropriate, "Plaintiffs"). Plaintiffs commenced this action against Chesapeake Appalachia, L.L.C. ("Chesapeake") and Equinor USA Onshore Properties, Inc. ("Equinor") (collectively, where appropriate, "Defendants") in Pennsylvania state court related to the terms of an oil and gas lease. Defendants removed the action on diversity grounds. Plaintiffs do not dispute that complete diversity exists, but they argue that it is unclear from the Complaint and the Notice of Removal that the jurisdictional threshold is met. So Plaintiffs conclude that this action should be remanded to state court. Because complete diversity exists and the record evidence shows that the amount-in-controversy is in excess of $75,000.00, the motion to remand will be denied.

## **I. Background**

Plaintiffs commenced this action by filing a Complaint against Chesapeake and Equinor on August 1, 2019 in the Court of Common Pleas of Wayne County, Pennsylvania. (*See* Doc. 1, Ex. "A"). The Complaint contains three causes of action:

(1) declaratory judgment (Count I); unlawful trespass on land (Count II); and breach of contract pled in the alternative (Count III). (*See id*.). The Complaint is silent as to the amount in controversy at issue in this litigation. (*See id*., *generally*).

On August 26, 2019, Defendants removed the action to this Court on the basis of diversity of citizenship. (*See* Doc. 1, ¶ 7). Specifically, Defendants contend that William Earnshaw is a Pennsylvania citizen, Helen Earnshaw is a citizen of Connecticut, Chesapeake's sole member is an Oklahoma corporation with its principal place of business in Oklahoma, and Equinor is a Delaware corporation with its principal place of business in Texas, *i.e.*, that the parties are completely diverse. (*See id*. at ¶¶ 8-9, 12-15). Defendants further aver that the amount in controversy exceeds $75,000.00. (*See id*. at ¶¶ 17-23).

Plaintiffs moved to remand this case to the Wayne County Court of Common Pleas on September 25, 2019. (*See* Doc. 8, *generally*).[1] In their supporting brief, Plaintiffs do not contest that the parties are completely diverse. (*See* Doc. 10, 4). Rather, Plaintiffs argue that Defendants are unable to demonstrate that the "combination of the value of the monetary and declaratory relief" sought in this case is more than $75,000.00. (*Id*. at 9).

Defendants filed their opposition to the motion to remand on November 6, 2019. (*See* Doc. 16, *generally*). With their brief, Defendants also submitted declarations from two Chesapeake employees. (*See* Doc. 16, Exs. "A"-"B"). Plaintiffs did not submit a reply brief within the time permitted by this Court's Local Rules. *See* M.D. Pa. L.R. 7.7. As such, the motion to remand is now ripe for disposition.

## II. Legal Standard

Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be

---

[1] Defendants filed a motion to dismiss prior to the submission of the instant motion to remand. (*See* Doc. 6, *generally*). The motion to dismiss will be resolved in a separate opinion.

2

removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007) (citation omitted). Removal statutes are to be strictly construed against removal, and all doubts are resolved in favor of remand. *See A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 208 (3d Cir. 2014) (citation omitted).

### III. Discussion

In their notice of removal, Defendants assert that this Court has original jurisdiction over the action by way of 28 U.S.C. § 1332(a)(1). (*See* Doc. 1, ¶ 7); *see also* 28 U.S.C. § 1332(a)(1) ("(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between -- (1) citizens of different States; . . ."). "For removal predicated upon diversity of citizenship, a proper exercise of federal jurisdiction requires satisfaction of the amount in controversy requirement as well as complete diversity between the parties . . . ." *In re Briscoe*, 448 F.3d 201, 215 (3d Cir. 2006). Plaintiffs do not dispute that complete diversity exists in the matter *sub judice*. (*See* Doc. 10, 4). Instead, Plaintiffs challenge whether the amount in controversy exceeds $75,000.00 as required for diversity jurisdiction. (*See id*. at 4-11).

When a party has not pled a specific sum of damages in the complaint, the notice of removal may assert the amount in controversy. *See* 28 U.S.C. § 1446(c)(2)(A)(i). The notice of removal must contain "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89, 135 S. Ct. 547, 190 L. Ed. 2d 495 (2014). "[O]nly when the plaintiff contests, or the court questions, the defendant's allegation" is "evidence establishing the amount" in controversy required by 28 U.S.C. § 1446(c)(2)(B). *Id*. *see also* 28 U.S.C. § 1446(c)(2)(B) ("If removal of a civil action

is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that -- . . . (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)."). Thus, where, as here, "a defendant's assertion of the amount in controversy is challenged . . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee*, 574 U.S. at 88, 135 S. Ct. 547. In making this determination, "the complaint, the notice of removal, and subsequent submissions related to the motion to remand" can be considered. *Klaphake v. Columbia Gas Transmission, LLC*, No. 17-1359, 2018 WL 1736791, at *1 (W.D. Pa. Apr. 11, 2018) (citation omitted). Such proof can be submitted in the form of declarations or affidavits. *See id*. at *3; *see also Ibarra v. Manheim Invests., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("The parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal."). Preponderance of the evidence in this context has been referred to as "proof to a reasonable probability that jurisdiction exists." *Frederico*, 507 F.3d at 195 n.6. "[W]here the plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum . . . the case must be remanded if it appears to a legal certainty that the plaintiff *cannot* recover the jurisdictional amount." *Id*. at 197 (emphasis in original).

In opposition to the motion to remand, Defendants submitted declarations from Courtney Moad (a Chesapeake Staff Landman) and Brian Lageman (a Chesapeake Project Manager). (*See* Doc. 16, Exs. "A"-"B"). According to Moad, Chesapeake owns 67.5% of the lease for a 54.50 acre parcel owned by Plaintiffs. (*See* Doc. 16, Ex. "A", ¶¶ 4-5). Moad further declares that between October 2017 and October 2019,

Chesapeake has tendered to Plaintiffs approximately $109,716.57 in royalty payments. (*See id*. at ¶¶ 6-8). Lageman, on the other hand, states that if Chesapeake was required to plug the portion of the wellbore that crosses below Plaintiffs' property, the cost to complete such work would be substantially greater than $75,000.00. (*See* Doc. 16, Ex. "B", ¶ 6). Lageman also declares if Chesapeake was required to plug that wellbore, it would lose approximately 3,955 feet of the wellbore, and the net present value of its lost production attributed to that footage of wellbore would be substantially greater than $75,0000.00 over the anticipated life of the well at issue. (*See id*. at ¶¶ 7-8).

Based on these declarations, Defendants argue that Plaintiffs' claims individually, as well as in the aggregate, exceed the jurisdictional threshold. (*See* Doc. 16, 5). First, as to the declaratory judgment claim (Count I), Defendants contend that the value of the object of the litigation, *i.e.*, the lease, is calculated by looking at the royalties paid to Plaintiffs, and this amount of royalties paid by Chesapeake alone (and not considering any such payments made by Equinor) is well in excess of $75,000.00. (*See id*. at 10-11). In addition, Defendants point to Lageman's statement that the present value of Chesapeake's lost production from the well at issue attributable to 3,955 feet of wellbore would be substantially greater than $75,000.00. (*See id*. at 11). Thus, Defendants conclude that the value of the lease alone exceeds the jurisdictional minimum. (*See id*.).

Second, regarding the trespass claim in Count II of the Complaint, Chesapeake notes that Plaintiffs received one-eights (1/8) royalty, or $109,716.57, but Defendants retained seven-eighths (7/8) of the proceeds derived from Plaintiffs' property. (*See id*. at 12-13). As a result, Plaintiffs' request for "remedies and damages" permitted by law on the trespass claim may include these proceeds retained by Defendants which would independently satisfy the amount in controversy requirement. (*See id*.).

Finally, as to the breach of contract claim, Defendants argue that if that claim was successful, Plaintiffs may be entitled to recover the seven-eights (7/8) proceeds

5

retained by Defendants. (*See id*. at 13-14). And, to the extent that Plaintiffs are requesting specific performance on that claim, *i.e.*, the construction of two additional wells in the unit containing Plaintiffs' property, the cost to complete such work would be substantially greater than $75,000.00. (*See id*. at ¶ 14).

The motion to remand will be denied. Regarding the claim in Count I of the Complaint, "[a]lthough declaratory judgments do not directly involve the award of monetary damages, 'it is well established that the amount in controversy in such actions is measured by the value of the object of the litigation.'" *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 397-98 (3d Cir. 2016) (alteration omitted) (quoting *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 347, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977)); *see also* 14AA Charles Alan Wright et al., Federal Practice & Procedure § 3708 (4th ed. 2016) ("With regard to actions seeking declaratory relief, the amount in controversy is the value of the right or the viability of the legal claim to be declared, ..."). "Here, the object of the litigation is the lease over plaintiff[s'] land. Defendant[s] ha[ve] provided evidence that the value of that lease, which covers oil and gas rights, exceeds $75,000." *Wells v. Cabot Oil & Gas Corp.*, No. 08-666, 2008 WL 2357756, at *2 (M.D. Pa. June 5, 2008); *Land v. Anadarko E&P Onshore, LLC*, No. 16-1730, 2016 WL 6563680, at *5 (M.D. Pa. Nov. 4, 2016) ("Plaintiffs offered no evidence to rebut SWEPI's contention that the amount in controversy had been satisfied, and indeed SWEPI supplied the court with a declaration by a knowledgeable party to that effect. Therefore, the Court can easily find that the requirement has been met.").

The amount in controversy requirement is also independently satisfied for the claims in Counts II and III of the Complaint. To the extent that Plaintiffs are successful on their trespass claim, they could recover damages "for all injurious consequences which are the nautral and proximate result of [Defendants'] conduct." *N.E. Women's Ctr., Inc. v. McMonagle*, 689 F.Supp. 465, 477 (E.D. Pa. 1988). Such damages could include the seven-eighths (7/8) proceeds Defendants derived from

Plaintiffs' property. The same is also true for the breach of contract claim in Count III of the Complaint. Further, insofar as Plaintiffs seek specific performance under the lease, *i.e.*, the construction of additional wells, the record evidence reflects that such costs would be substantially greater than the jurisdictional threshold.

In sum, the uncontested evidence reflects that the amount in controversy exceeds $75,000.00. And, as complete diversity exists between the parties, this action was properly removed pursuant to 28 U.S.C. § 1441. This case will proceed in federal court.

## IV. Conclusion

For the above stated reasons, Plaintiffs' motion to remand will be denied.

An appropriate order follows.


Deccember 16, 2019 /s/ A. Richard Caputo
Date A. Richard Caputo
United States District Judge